2-10458 Blanchard v. Via. The council can come up, but we'll hold in place while everybody gets settled. All right. May it please the court. Judges must not invade the province of the jury. If reasonable men in the exercise of impartial judgment might reach a different conclusion, then the jury verdict must stand. Stated differently, a judgment notwithstanding the verdict is error unless there is only one reasonable conclusion without weighing the evidence and the credibility of the witnesses. The district court invaded the province of the jury. Thus, this court should reverse and reinstate the jury's verdict on quantum merit. As a roadmap for this court, I'll begin by discussing the standard of review, followed by why this case is distinguishable from some of the cases relied upon by the district court. And then briefly, I'll address our request in the alternative to certify this issue to the Texas Supreme Court. So, in the context of a post-verdict motion for judgment, only if there is no legally sufficient evidence to support the verdict should the motion be granted. The court on review will consider all the evidence in the record. It'll draw all the inferences in Blanchard's favor, and it cannot make credibility determinations or weigh the evidence. And, importantly, the court disregards all the evidence in the motion's favor that the jury is not required to believe. So, to sustain the jury's verdict, this court must find in the record legally sufficient evidence of the notice element of quantum merit. This element requires that Blanchard had provided direct health care with services under such notified direct health care that Blanchard was expecting to be paid for his services. So, the notice element under quantum merit, it's not the same as it would be in the context of a contract. It does not require a recitation of price and quantity. It does not require the specific details that this court would look for in a contract context. Rather, it merely requires that the circumstances under which the services are provided are adequate to put the party receiving and accepting those services on notice that the party providing the services wanted to be paid. Counsel, was there a jury instruction, a substantive instruction on notice, how the jury was to consider whether the requisite notice was satisfied? No, Your Honor. I believe the instruction only followed the Texas pattern jury charge and specifically just recited the way the Texas Supreme Court in Vought phrased the cause of action. Okay. In Campbell v. Northwestern Life Insurance Company, the Texas Supreme Court was presented with facts involving a future business opportunity. Specifically, there was an unenforceable verbal purchase option. Mr. Campbell, he was involved in managing an apartment complex. And he contended that the defendant, Northwestern, had promised him that if he managed and handled the repairs of the apartment complex, he could purchase the apartment complex at cost. That was a disputed fact amongst the parties. And at trial, the jury found that the parties had reached that agreement. Mr. Campbell conceded that it was an unenforceable agreement under the statute of frauds. And the Court of Appeals reversed the verdict on the basis of there was no agreement. The Texas Supreme Court came back and reversed the Court of Appeals and reinstated the verdict because the unenforceable option contract nature of the parties' agreement supported that the defendant was on notice that Mr. Campbell expected to be compensated. A few years later in court, the Texas Supreme Court reinforced this notion. The Texas Supreme Court stated the expected payment does not have to be monetary. It may be any form of compensation. The court further identified three specific types of non-monetary compensation that it held had put an opposing party on notice that the party expected compensation. So it noted the unenforceable purchase option, an interest in land, and the devise of a residence. Importantly, Blanchard was never required to provide any services to Direct Health Care. There was no contract. There was no obligation. He did so, as he testified, in the beginning because he was hoping to purchase Direct Health Care. Was there any difference between what he did before the agreement as opposed to after? I know there was information about some loans that he had either signed on for. I believe those have been repaid, as I understand the briefs. But is there anything different than what he lent in terms of effort, not lent in terms of money, to the business before the agreement to purchase and after? Yes, Your Honor. So in the context of the cause of action, Blanchard could provide some services before providing notice to DHC. But the cause of action does not limit Blanchard because he previously provided services from recovering for additional services provided once notice has been provided. The way I like to think about this is if I have a friend or someone who asks me to help them move, I can show up and begin helping them move. And then halfway through the process, I can say, you're going to pay me for this, right? And he can say yes or no, and I can continue helping him or not. In this context, Blanchard had concern that Direct Health Care, a third-party purchaser would show up and buy the company out before they had consummated their deal. And the parties had discussions. How would they secure Mr. Blanchard's efforts? Like how would he be compensated if that happened? And he testified under direct examination that as a result of those discussions, the parties created and executed the purchase agreement. Is there anything other than the purchase agreement that you believe establishes the requisite notice? Just his additional testimony that they had had discussions about the terms of the purchase agreement before executing it. Well, did he have any discussion along the lines of what you just illustrated with the helping someone move? Oh, by the way, I do expect to get paid. You just referenced discussions about the purchase agreement, but it contains a lot of provisions. What I'm looking for is there anything in the record that we can look at to establish requisite notice other than the purchase agreement itself? Is there any testimony about a conversation where he directly said, I intend to be compensated whether we go forward or not? Yes, Your Honor. In the context of his testimony surrounding the creation and execution of the purchase agreement, he testifies that there were discussions between him and the defendants regarding, in the event that the crazy money came along, how would he be paid? And I believe what has to happen is, and this court has to draw the reasonable inference from those discussions about the terms of the purchase agreement and the inclusion of this provision that they're assigning in a value to his services within that agreement to draw that inference. But there are no express references. That provision references, I believe, $100,000. $100,000. Do you have any idea or argument as to why the jury put on the verdict form $35,000, or is that just a straight-up quantum Meroit, which is what your claim is, quantum Meroit estimation? Your Honor, I believe it is an estimation. I believe the jury weighed the evidence, made a finding in their mind as to how much time Mr. Blanchard provided services after providing notice, and determined that the $100,000 per year was excessive and awarded only $35,000. Did your client provide any new services after the purchase agreement was executed, or did he just continue to provide the same service? Your Honor, I believe in the record he continued to provide the same and or similar services. So there was no cessation of services after the parties executed the purchase agreement. But they remained basically the same. I believe they were substantially the same, yes, Your Honor. Okay. And the court can see at the appellant's brief at pages 5 and 6 all the record citations that identify those services occurring before the execution of the purchase agreement and those that occurred after. And one thing I would note is one of the arguments in this case is that because he provided the same services before, he should not be able to recover because he continued to provide those same services, the suggestion being that he had agreed previously to provide those services and was therefore required to continue providing them. That's the suggestion that this court has to draw because of the purchase agreement and because of the parties' discussions of how would Mr. Blanchard's services be compensated if someone else came along and bought out the company. Mr. Blanchard, I don't know that there's any testimony, so I don't want to suggest anything else at the record here, but there is no requirement that he continue providing services, and there was no question as to whether or not he did continue providing services. And viewing the evidence in the record that's available, it is reasonable for the jurors to conclude that the only reason he continued to provide services is because of the purchase agreement and the protections that the parties had agreed to that he would be paid that $100,000 per year. And what I'd like to briefly talk about is that most of the cases that are relied upon by the district court and that are urged by opposing counsel, in fact all of them, they're distinguishable because there is no evidence of an agreement that was reached amongst the parties. There's no evidence of either an oral agreement that is deemed unenforceable or a written agreement that is deemed unenforceable. And so in this case, the parties' purchase agreement, which was ultimately found to be unenforceable, makes all the difference because it is evidence that the parties had contemplated Mr. Blanchard must be paid for his services. And again, it's not the $100,000 amount versus the amount of the award or the nature of the services provided before and after. That is not the critical question. The critical question is whether him continuing to provide services in the context of the purchase agreement, whether the reasonable juror could conclude from that that direct health care was unnoticed, that he expected compensation. Well, his services initially were aimed at him ultimately buying the company, right? Yes, Your Honor. So on that trajectory, he's performing whatever services there are. So somewhat related to the question Judge Engelhardt asked, where in the continuum were there any of these conversations or some demarcation between the difference in his conduct all along when he no longer could buy the company? Your Honor, I believe that demarcation line is the purchase agreement. So on February of 2019, when he addressed that issue of how will I be compensated if someone else buys the company, the parties discussed it, created the purchase agreement, and both parties executed it. And I believe that for purposes of a demarcation line, that's what the record reflects. And last, Your Honor, as to our request in the alternative for certification to the Texas Supreme Court, we believe that the record contains legally sufficient evidence to support the jury's verdict. And certification would only be appropriate if the question of whether the future business opportunity bars the court from considering the evidence that's in the record on the basis of it being based in part on a future business opportunity. What would the cert question be? So the cert question, and we did make a proposed question within our briefing, but to respond to your question, I think the focal point is the cause of action provides, you know, notice given that the party wishes to be paid. Well, no, I'm just asking because, you know, they've got vote. It's not like a case where Texas Supreme Court, there's no law, you know, about quantum merit, et cetera, et cetera. So it's just like how would the question be articulated in such a way that the Texas Supreme Court would feel like, hey, you've got void in other cases, go decide the case, as opposed to some void, if you will, that we don't know. That's why I ask, you know, what would the certifiable question? It couldn't be troubleshooting by X, right? No, understood. And I apologize to the extent of perhaps I was doing that in a roundabout way. But the future business opportunity language in the case law suggests it essentially overrides the notice language in the cause of action. And so asking the Texas Supreme Court whether the future business opportunity supersedes the notice element essentially is the nature of the question. Okay. All right. Thank you, sir. Thank you. Appreciate it. All right. We'll hear from counsel opposite, Mr. Garcia. Good morning, Your Honor. Good morning. May it please the Court. My name is Benjamin Garcia, and I represent Direct Healthcare, Inc. and Denise Vai. My clients are asking that this Court affirm the judgment as a matter of law for two reasons. First, there was legally insufficient evidence for the jury to find for Mr. Blanchard on the fourth element of quantum Merowith, that Mr. Blanchard provided services under circumstances that reasonably notified Direct that he expected compensation for those services. And second, because Texas law bars recovery under quantum Merowith because Mr. Blanchard's services were provided with the expectation of a future business opportunity or advantage. Is that second argument independent of the notification? You're advancing that? Yes, Your Honor. These are two separate reasons that Mr. Blanchard should lose. First, legally insufficient evidence. Second, even if the evidence was sufficient, there is a bar under the substantive law of Texas to recovery under this cause of action under these circumstances. As to the certification question, my clients are asking that that be denied. There are ample sources of state law for this Court to make a principled rather than conjectural conclusion as to the state of Texas law. And secondly, considering principles of comity. And as to the last thing that we are asking for, my client Denise Vai asks that the appeal against her be dismissed for want of prosecution. On legal insufficiency of the evidence, the evidence was legally insufficient for a jury to find for Mr. Blanchard's on the fourth element of quantum Merowith. On that fourth element of quantum Merowith, Mr. Blanchard was required to prove that he provided services under circumstances that reasonably notified Direct that he expected compensation for his work. I would like to point out to the Court and emphasize this. This is the language from Vort, from Beshara. This is the law from the Texas Supreme Court. It's not just notice. That oversimplifies the law. The question is whether the services were provided under circumstances that reasonably notified the defendant. And so we look at the circumstances in which the services were provided, not just were they on notice as we tend to say in the law. And so what were the circumstances? Well, from the beginning, Mr. Blanchard was supposed to buy Direct, not work for Direct. From 2015, when they were introduced, February 2015, until June 2020, when things fell apart, he was supposed to buy Direct, not work for Direct. Those were the circumstances. That's well over 60 months. Over 60 months he was supposed to buy the company. And so the question is, viewing the entire record, not just the one sentence that the appellant has hung its hat on, but viewing the entire record, what were the circumstances under which his services were provided? This question about whether there's a demarcation, some point in time where now they're on notice, it's critical in this case, especially when you consider how this case was tried. When you consider the appellant's theory of recovery at trial, it was all-inclusive. 2017, 2018, 2019, 2020, that was their damage model. There was no demarcation in their request to this jury, in their proof to this jury, in their expert's damage model. So these are the circumstances under which the services were provided. Before the purchase agreement, as I said, Mr. Blanchard was introduced to Ms. Villa as a potential buyer. For years, he reviewed Direct's financial statements. He made suggestions to Direct to make it more profitable. And this is before the purchase agreement. That was in 2018 that he made those suggestions to make the company more profitable. And in the year before the purchase agreement, again, 2018, he contributed capital to Direct to help make it more capital. I'm sorry, make it more profitable, including paying for an office lease and making nine months' worth of promissory note payments. He's injecting capital into the company to make it more profitable before the purchase agreement. On the expectation that he would become the owner. Exactly, Your Honor. Because he was going to buy the company, he's trying to make it a better company so that he can get financing and so that he ends up buying a healthier company. So these were self-motivated, as any businessman would do. I mean, I don't fault him for being a businessman. But with the expectation of buying the company, not for compensation. Also in 2018, he guaranteed some debt to promissory notes, one in March of 2018, one in December of 2018. This is all before the purchase agreement. And so by the end of 2018, before the purchase agreement, he had been a likely buyer for four years. And he was trying to improve Direct's financial performance so he could obtain financing. He testified, this is Mr. Blanchard's own testimony. Through the end of 2018, he did not expect compensation for his services. And that is in the record at 3572, lines 17 through 20. So his own testimony is that through the end of 2018, he didn't expect compensation for his services. Then the purchase agreement was signed on February 7, 19, four years into the party's interactions. After the purchase agreement was signed, he continued making those monthly promissory note payments, as he had before. He continued reviewing financial statements, as he had before. And he made another guarantee of the promissory note. He renewed one of those promissory notes in December of 2019. So he guaranteed a debt, as he had before. The circumstances were unchanged. They were the same services. It was the same relationship as a potential buyer. And he was still supposed to buy Direct, not work for Direct. And so, viewing the entire record, even in the light most favorable to Mr. Blanchard, there was legally insufficient evidence to support the jury's finding. There was no instruction to the jury. Go ahead. I'm thinking about the answer to the question I was going to ask. I was going to address Judge Englehart's point earlier. There was no specific instruction given to the jury saying, focus on the services provided after the purchase agreement. There was no specific instruction about what circumstances could provide reasonable notice, and you can only award for the period after reasonable notice was imputed to the defendant. Instead, their damage model started in 2017, 2018, both before the purchase agreement, 2019, and half of 2020. Your Honor asked earlier, where did the jury come up with this $35,000 number? This is pure speculation. I will admit it. We weren't in that jury room. We can't know what they were thinking. But look at this. 2017, 2018, 2019, and half of 2020. That's $10,000 a year and $5,000 for half of 2020. Pure speculation, but I think that's how the jury might have got to $35,000. Your Honor, I have my point. Let me go above that, the damage award. The jury is specifically asked, and I'm focused on the jury verdict form, the quantum merit page, which is at issue here. It asks, did Gregory A. Blanchard perform compensable work for Denise Villa into a direct health? And then it says, he performed compensable work. This is sort of like an instruction at this point to the jury as they consider the evidence. He performed compensable work if, one, he rendered valuable services or furnished valuable materials, two, that Denise Villa and or direct health care accepted, used, and benefited from the services or materials, and three, and this is the important one, I think, unless I'm missing the issue, under the circumstances, kind of like it tracks the language that you just said at the outset of your remarks, under the circumstances, Denise Villa and or direct health care were reasonably notified that Gregory Blanchard expected to be compensated for the services or materials, and the jury answers yes as to direct health care. So is the reversal, when the court vacated this part of the jury's verdict, on what ground, that it was legally insufficient or that there was no evidence to support the answer to the question? So the way that that question was phrased, I'm not sure if I can tease out the difference between those two standards. It's my understanding that the court's JNOV was, or judgment as a matter of law, was because the evidence was legally sufficient on the fourth element of quantum merit, meaning there was not more than a scintilla of evidence to support the jury's verdict. I hope I'm answering Your Honor's question. There was legally insufficient evidence, and that's one of the two bases for the judgment as a matter of law. So the way this case was tried, there were damages from 17 and 18 before the purchase agreement was ever even signed. And so there was no evidence for the jury to have found that they were delivered under circumstances that reasonably notified direct that Mr. Blanchard expected compensation for those services. They were provided before the purchase agreement. They continued after the purchase agreement. And when you consider the entire circumstances, they weren't on notice. And the Texas Supreme Court has held that that notice has to come before the services are provided. And so it can't be something that is brought up in the middle of the interactions. To use counsel's example of somebody coming over to help him move, and halfway through he says, hey, you're going to pay me for this, right? Imagine then, okay, say they say yes. Imagine then a jury trial based on that. What should be submitted to the jury as the compensable services? I respectfully submit that it would be the services rendered after they were on notice. Well, helping move is not the same thing as acquiring the business. Certainly not. So there's nothing expected after the move except possibly payment for the move, but not acquiring an asset. I agree 100%, Your Honor, and that actually brings me to my second point. But just to make sure that that hypothetical is brought home, that I conclude my thought on that. At trial, I need to separate my damages from the time on which the defendant is on notice that payment is expected. And if I, as a litigation decision, in order to maximize my damages, if I fail to separate that, that's on me. And it could call into question my entire recovery. Let me just say, so you can go to the next point. See, for me, the problem is this is a fully tried jury case. You know, I expect something like this on some judgment. So here, based on what you say and what the plaintiff's theory, I'm wondering how the jury even got the quantum merit issue. Because from what you're arguing, you know, that shouldn't even still be in play at that point in time that the jury even gets the quantum merit issue. Because based on what you argue, that doesn't satisfy the requirements of that. So assuming that, because based on what you're saying, that shouldn't even be in play. So it gets to the jury. They get some kind of charge. They come back. They make a determination. OK, King's X. We see plenty of jury cases where you might have done something different, but you let the jury get it. So then to say where the judge acts, then that sounds like, well, he pulls it because of an insufficiency of evidence, as opposed to legally, this shouldn't have gotten there. So it just sounds to me like, you know, as I said, there's no issue here about that they were improperly charged on quantum merit. They were allowed to get the question, which is debatable. They get the question, and then they answer it. And so then it's pulled back, saying legally insufficient. Your argument overall is that that shouldn't have even been in a case under the Supreme Court's ruling case. But, I mean, we are where we are. Correct. And I did ask for a judgment as a matter of law at the conclusion of the plaintiff's evidence and ours. And so I wish the judge would have never submitted this question, but he did. Well, I only say it because it's like, okay, once the jury gets it, you know, then, you know, where are the facts? The jury said there was. The judge said, well, insufficient facts. So that sounds like an insufficiency argument, which ordinarily we'd say, well, we defer to the jury on that matter. That just gets a little bit dicey. I'm not saying with the outcome, but that's the troublesome part for me. It was given to the jury in the first place. Unless there was no evidence that the services were rendered under circumstances that provided reasonable notice. What you made reference to your post-trial motion, did the judge take that motion under advisement? Or did the judge deny it in an indication that there was evidence that the jury should consider? I wish I knew the answer to that question, Your Honor. I do not. He didn't rule on it? Or did he say, I took it under advisement? What did he do after you made the motion? I don't recall, Your Honor, if he denied it or if he took it under advisement. I'm sorry. I don't know the answer to that question. There's a big difference, I think, in terms of a judge thinking that there is conflicting evidence that would sufficiently support a jury verdict either way, as opposed to a judge who says, you know what, you haven't proven your case, and no jury could find in your favor on that claim. I was very much afraid that this panel would ask me a question I didn't know the answer to. I was hoping it wouldn't happen, but it has. And so I'm sorry I can't answer the question. Your Honor, bringing us to the second reason that the judgment as a matter of law should be affirmed, there is a bar to recovery under Texas law because Mr. Blanchard was supposed to buy direct, not work for direct. This is a longstanding rule of law. It's been the law that's announced from the PICO oil case out of Dallas in 1990, the Anderson v. Iceland Seafood Corp., an opinion from 1996 out of this circuit, applying Mississippi law that, Your Honor, Judge Wiener was involved in that case, Richter from San Antonio, 2002, and LTS Group v. Woodcrest Capital, Dallas, 2002. This is a longstanding rule of law, and it's undisputed that Mr. Blanchard was supposed to buy direct, not work for direct. Mr. Blanchard's own testimony was that he provided the services to direct in expectation of a future business opportunity. I asked him that question directly. He answered it directly. That's in the record at 3574, lines 17 through 22. He provided those services to improve its financial performance so the bank would finance the purchase and so that he would end up buying a better company. So if you're correct on that point, do we get to this other? Your Honor, the judgment as a matter of law could be affirmed on either basis. You're saying it's legally barred. It is legally barred, Your Honor. Did you file a motion for summary judgment? You made reference to your post-trial motion. Was there a Rule 56 motion? In the complaint, he talks about, I'm going to buy the business, and I've got this agreement to purchase, and I didn't buy the business, but one of my theories is that I should be compensated. That raises the issue, like you say, the circumstances are that he is a potential purchaser, and you're arguing that the Texas case law is pretty clear that you can't recover on quantum merriment. The only motion for summary judgment was on the breach of contract claim, and that was granted. This was not advanced in a motion for summary judgment. Part of the problem with this case is that it was everything in the kitchen sink sort of case. And so we're defending, I think, six different causes of action. And so focusing on the breach of contract, that was the only basis for summary judgment. Mr. Blanchard testified that he did not inform Ms. Villa that he expected compensation for guaranteeing the 2018 promissory notes, and he testified that through the end of 2018, he did not expect compensation for his services. He also testified that he only made the payments for direct because he expected to file it. And that was in the record on appeal, 3571 lines 15 to 17. Texas law prohibits Mr. Blanchard's recovery because his services were to gain a business advantage or opportunity, not for direct compensation. And that makes sense when we think about the theory, the doctrine behind quantum merriment. It implies a promise to pay for services rendered. When they're given under circumstances, they give the defendant reasonable notice. I see I'm running out of time, so I'm going to try to finish my last two points. We request that this court deny certification because there is plenty of law out there from several different courts of appeals for this court to know what the law is in Texas. And I would point out that in the PICO oil case, there was a petition for writ of error to the Texas Supreme Court that was denied. And then a motion for rehearing was denied in that case as well. So while there's not Texas Supreme Court law on this point, there's plenty of intermediate court of appeals opinions on it. The state of the law in Texas is clear under principles of comity. The unique circumstances of this case are not likely to recur, and the judgment Mr. Blanchard seeks to reinstate is only for $35,000. We ask that the appeal against Ms. Villa be dismissed for want of prosecution because there are no issues that have been presented to this court for the judgment on the verdict in her favor. And so we're asking that this court affirm the judgment as a matter of law on either of those two bases and that the case against Ms. Villa be dismissed for want of prosecution. Thank you, Your Honor. Thank you. Back to you, Mr. Zimmerman. Thank you, Your Honor. Just briefly to follow up on a few questions that I don't believe received complete answers previously. Regarding the alternative request for certification, the request was for whether services rendered an expectation of a future business opportunity or advantage. Why don't you use your time on the other points? The certification thing, I think we've got one way or the other. It's not a major player in the case, so why don't you use your four minutes on the other things that were raised? Then for the court's purpose, the memorandum opinion in order. Or provided services without first notifying DHC that he expected compensation. So that's the basis for the court's hold. And then Mr. Blanchard's testimony about his discussions and the need to protect himself, that will be in the record at 3572 through 3575 in that portion of the record. There, that's where the court will see that Blanchard discussed that nobody expects to work for free. There was a purchase agreement. They had discussions about the purchase agreement before signing it. And the reason for those discussions was because he was concerned he would not be compensated with the option to purchase the company or with cash if a separate buyer came along and bought out the opportunity. Well, didn't he have a purchase contract? There was a purchase contract. And the parties were, under that purchase contract, there was a breakup fee provision that he was to be paid $100,000 per year if there was a breakup. And of course, the breakup fee itself is different from the buyout. And that's why this case is distinguishable, because he says expressly, I want to be paid if there is no buyout. But didn't he say that in hindsight? That was at around that February of 2019 time period. Yes. And so the record's clear that there were some services provided for which he is not seeking payment. But there were additional services, 16 months' worth, for which he is asking for payment, based upon the parties' discussions of how he would be protected if someone else bought the company or if direct health care chose not to sell to him. Was that how it was presented? Your opponent referenced your damage model, your expert's testimony, where there was no differentiation according to his citation of the record. Was there a apportionment presented to the jury? Admittedly, I do not know. And I could add additional briefing if needed. But my recollection is, due to how all the causes of action were set forth, I believe the request was based upon the language of the purchase agreement, that it would be $100,000 per year beginning in 2017. So I believe the request followed the language of the purchase agreement. And then I would also point out that the line of cases following Payco Oil, they speak in terms of a hoped-for contract. This is not a case of a hoped-for contract. There was a purchase agreement. It was merely unenforceable. In none of the cases, Payco Oil or any cases that cite it, was there ever a contract. Each dealt with the idea of, I hope that in the future we may enter into business. The parties here had already entered into business, and the jury reasonably drew that distinction. And then I would last point out, during the jury charge conference, Direct Health Care proposed adding to the jury charge an additional element to the claim, specifically that the services Blanchard provided were not done in expectation of a future business opportunity. So Direct Health Care is asking this court to add an element to that cause of action. And then I would also note the suggestion that the Texas Supreme Court had a chance with Payco Oil. Writ denied means the Texas Supreme Court is not satisfied that the opinion of the Court of Appeals have correctly declared the law. So there's no endorsement for a writ denied that the law has been correctly stated by Payco Oil. Thank you, Your Honor. All right. Thank you, Counsel. Thank you for both sides for the briefing of the case and the oral argument. The case will be submitted, and we will get it decided as soon as we can.